J-S03044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.T., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.T., NATURAL MOTHER | : | No. 1466 WDA 2016 |

Appeal from the Order entered September 14, 2016
in the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CP-02-AP-082-2016

BEFORE:   OLSON, SOLANO, and STRASSBURGER[*], JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 22, 2017**

N.T. (Mother) appeals from the order entered September 14, 2016, in the Court of Common Pleas of Allegheny County, which terminated involuntarily her parental rights to her minor son, J.T. (Child), born in August 2010.[1]  We affirm.

The orphans' court summarized the relevant factual and procedural history of this matter as follows.

> Although dependency proceedings regarding Child have only been before the [orphans' c]ourt since 2014, the Allegheny County Office Children, Youth and Families [(CYF)] has been involved with Mother and Child since Child's birth in 2010.  CYF became involved with Mother and Child due to concerns about Mother's substance abuse and mental health issues.  CYF first removed Child from Mother's care by Emergency Care Authorization (ECA) on December 19, 2014, when Child was four

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The order also terminated the parental rights of Child's father, R.A.  R.A. has not filed a brief in connection with this appeal, nor has he filed his own separate appeal.

years old. The [orphans' c]ourt returned Child to Mother's care in a residential drug and alcohol treatment facility on January 13, 2015. The [orphans' c]ourt adjudicated Child dependent on January 28, 2015. On February 2, 2015, CYF again removed Child from Mother's care pursuant to a second ECA. The [orphans' c]ourt again returned Child to Mother on March 27, 2015. CYF removed Child for a third and final time on April 17, 2015. CYF placed Child in a kinship foster placement. CYF moved Child to his current foster care placement on July 13, 2015. Child has remained in that placement since then. CYF filed a petition to terminate Mother's parental rights on May 2, 2016.

Orphans' Court Opinion, 11/2/2016, at 1-2.

The orphans' court conducted a termination hearing on September 2, 2016. Following the hearing, on September 14, 2016, the court entered an order terminating Mother's parental rights. Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Mother now raises the following issue for our review. "Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that termination of [Mother's] parental rights would serve the needs and welfare of the Child pursuant 23 Pa.C.S. §[]2511(b)?" Mother's Brief at 5.

We consider Mother's claim mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial

2

court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to Section 2511(a)(2), (8), and (b), which provides as follows.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child

3

to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (8), and (b).

On appeal, Mother concedes that CYF presented clear and convincing evidence that her parental rights should be terminated pursuant to subsection 2511(a). Mother's Brief at 9 ("CYF, the petitioner, did clearly and convincingly establish threshold grounds for termination pursuant to 23 Pa.C.S. §[]2511(a)(2)."). Thus, we need only consider whether the orphans'

4

court abused its discretion by terminating Mother's parental rights pursuant to subsection 2511(b). The requisite analysis is as follows.

> [Subs]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [subs]ection 2511(b) does not explicitly require a bonding analysis and the term bond is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, the orphans' court found that Child has a bond with Mother, but that this bond is detrimental to Child's needs and welfare. Orphans' Court Opinion, 11/2/2016, at 4. The court further concluded that "any potential damage that may result from prolonging this relationship substantially outweighs the pain that may be caused by severing any remaining bond."

*Id.* at 4-5. The court emphasized the testimony of psychologist, Patricia Pepe, Ph.D., who opined that Child's contact with Mother should be significantly decreased. *Id.* at 4.

Mother argues that the conclusion of the orphans' court that Child does not share an appropriate bond with her was not supported by clear and convincing evidence. Mother's Brief at 12-13. Mother contends that Child loves her, and that terminating her parental rights will have a negative impact on him. *Id.* at 12.

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion by terminating Mother's parental rights to Child involuntarily. During the termination hearing, Dr. Pepe testified that she conducted an individual evaluation of Mother on April 30, 2015, as well as an individual evaluation of Child on November 10, 2015. N.T., 9/2/2016, at 6-7. Dr. Pepe also conducted an interactional evaluation of Child and Mother on September 2, 2015, and interactional evaluations of Child and his foster mother on December 29, 2015, and June 16, 2016. *Id.* at 7-8.

Concerning Child's relationship with Mother, Dr. Pepe testified that Child clearly loves Mother and exhibited bonding toward her during their interactional evaluation. *Id.* at 14, 17. However, Dr. Pepe expressed concern that maintaining Child's relationship with Mother appears to be causing him significant confusion and distress. Dr. Pepe recalled that Child was "having considerable conflict" around the time of the June 16, 2016

6

interactional evaluation of Child and his foster mother, and was exhibiting severe behavioral issues. *Id.* at 23. Dr. Pepe received collateral information indicating that Mother was offered two visits with Child per week, but was only exercising about one visit per month. *Id.* While Mother had the ability to call Child on the phone, she had only made one phone call since January or February 2016. *Id.* Mother also was making numerous "negative comments" to Child around this time, which included telling Child that "he was coming home and he had many new toys and new clothing[.]" *Id.* When Dr. Pepe met with Child, Child reported that he "feels very sad because he misses [Mother] and he worries about her, about whether she's going to show up for visits. And he said that he has to take care of [Mother]." *Id.* Child further stated "that [Mother] tells him things on visits that make him feel sad and confused and that, in his words he said he feels sad and, quote, upside down." *Id.* at 24.

Concerning the impact that terminating Mother's parental rights would have on Child, Dr. Pepe expressed concern that Child's foster mother is not currently a pre-adoptive resource, and that ending Child's relationship with Mother may not result in Child being placed in a permanent home. *Id.* at 31. Dr. Pepe also acknowledged that terminating Mother's parental rights would likely make Child "very sad." *Id.* at 32. Nonetheless, Dr. Pepe emphasized that Child is already very sad as a result of his continuing relationship with Mother, and that Child "can't continue like this because he's

acting out behaviorally, and psychologically, he's having a difficult time."

*Id.* at 30-32. Dr. Pepe explained,

> You know, I have difficulty with children becoming legal orphans, but at the same time, [Child] has been too disappointed. He is so reactionary to what [Mother] says and does and doesn't do and, ... it's too overwhelming for him. I mean, as he said, he just blanked out and he doesn't know what end is up, and that's not fair to him because as long as there is that confusing -- you know, that stance of anxiety and not knowing what's going to occur, that's going to take away his ability to develop stability and develop positive functioning.
>
> So, you know, on one hand, it's difficult, but I think at this point, [Mother] having such a negative influence on him by not coming to visit, by saying things to him, by confusing him, … that's also a concern.

*Id.* at 28.

Thus, the record supports the finding of the orphans' court that terminating Mother's parental rights will best serve Child's needs and welfare. While Child loves Mother, it is clear that Child's relationship with Mother is not healthy, and causes him considerable emotional distress. It was well within the court's discretion to accept the testimony of Dr. Pepe, and to conclude that Child simply "can't continue like this," and that the benefits of ending Child's relationship with Mother will outweigh any harm that Child may experience. *See T.S.M.*, 71 A.3d 251 at 271 (finding the trial court erred in denying termination when, although there was a strong parent-child bond, the trial court "failed to recognize the substantial, possibly permanent, damage done to th[e] children by the prolonged, unhealthy, pathological bond" they had with their mother.).

Accordingly, because we conclude that the orphans' court did not abuse its discretion by terminating Mother's parental rights to Child involuntarily, we affirm the court's September 14, 2016 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2017